UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

MARY GODWIN,

       Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES,
LTD, a Liberian Corporation,

       Defendant.

_____/

## PLAINTIEF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Mary Godwin, hereby sues Royal Caribbean Cruises, LTD., a Liberian Corporation, (hereinafter "RCCL") and alleges as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Mary Godwin ("Mrs. Godwin") is a resident of the State of Georgia. Mrs. Godwin was a resident of the State of Georgia at the time of the underlying events.

2.     Defendant, RCCL, is a Liberian Corporation with its principal place of business in Miami, Florida.

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because the amount in controversy exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity between the parties hereto. The Court also has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

4.     The Court has jurisdiction over RCCL pursuant to Florida Statutes §48.193 because (a) RCCL is engaged in substantial and not isolated business activity within this state, and routinely operates in the waters of this state; (b) the causes of action set forth herein arise

from RCCL, personally and/or through its agents, operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; and (c) the causes of action set forth herein arise from RCCL, personally and/or through its agents, committing tortious acts in whole or in part within this state.

5.     Venue is proper in this Court because RCCL's principal place of business is within Miami-Dade County and a substantial part of the events or omissions giving rise to the causes of action set forth herein occurred within the county. The cruise line ticket at issue also requires that suit be brought in this Court.

### FACTUAL BACKGROUND

6.     RCCL, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the *RCCL Brilliance of the Seas.* At all times material hereto, RCCL owned, operated, managed, maintained, and/or controlled the *RCCL Brilliance of the Seas*, including the medical department.

7.     RCCL, through online, television, radio and print advertisements specifically markets its cruises as family friendly vacations with extensive offerings and activities for people of all ages and abilities. As part of providing vacation cruises, RCCL is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and evacuation decisions.

8.     RCCL, through online, television, radio and print advertisements specifically market their cruises as family friendly vacations with extensive offerings and activities for people of all ages and abilities.

9.     As part of providing vacation cruises, RCCL is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and medical evacuation decisions.

10. As part of providing vacation cruises, RCCL advertised that the ship's onboard medical center was staffed by licensed physicians and critical care nurses and that it is well equipped to handle most emergencies.

11. RCCL charges money to passengers for medical services provided. As such, RCCL is in the business of providing medical services to passengers for profit, and owes a duty to provide competent and non-negligent medical care and services.

12. RCCL owned, operated, controlled, and/or maintained the medical center aboard the *Brilliance of the Seas*. RCCL maintained a medical operations division at corporate headquarters in Miami, Florida. The onboard medical center and medical operations division work as a team in the event of medical evacuation emergency. RCCL is aware that medical emergencies may arise on its vessels and is aware of the essential need to promptly evacuate passengers suffering from serious medical emergencies.

13. RCCL, through its shore-side Fleet Medical Operations division, had the ability to control and monitor each and every step taken by its medical staff onboard via telephone, video conference, skype, or otherwise.

14. RCCL's officials and employees had the ability to monitor and participate in safety, security, and medical emergencies onboard the vessel by communicating with the *Brilliance of the Sea's* crew via telephone, videoconference, Skype and other means of communication. RCCL, through both the crew onboard and their shore-side officials and employees, who acted in consultation with one another, failed to properly care and promptly and properly evacuate Mrs. Godwin.

15. Upon information and belief, the Master of the *Brilliance of the Seas* was consulted regarding Mrs. Godwin's condition and the emergent nature of the situation. The Master is an employee or agent of RCCL and had the ability to divert or control the vessel or

3

make the appropriate decision to afford one of its passengers the medical care and treatment he desperately needed.  He and his bridge team are also responsible with determining the logistics for medical evacuation or disembarkation, properly coordinating with the United States Coast Guard to evacuate sick and injured individuals, and ensuring that RCCL passengers are afforded the logistical support needed during a medical emergency.  This responsibility is carried out in conjunction with RCCL shore-based fleet operations and shore based individuals from RCCL that coordinate voyage logistics.

16.     At all times RCCL was vicariously liable for the negligence of the medical staff and doctors onboard the *Brilliance of the Seas*, who were employees, apparent agents, or actual agents, of RCCL.

17.     At all times RCCL was vicariously liable for the negligence of the non-medical personnel onboard the *Brilliance of the Seas*, who were employees, apparent agents, or actual agents, of RCCL.

18.     At all times RCCL had control or the right to control all persons working in its medical departments, including the Doctors and personnel that improperly treated and negligently mismanaged Mrs. Godwin's condition.

19.     Mrs. Godwin and her family relied upon RCCL's representations regarding its available shipboard medical facility with its qualified and competent physicians in their decision to purchase the cruise and contract with RCCL.

20.     On December 15, 2019, Mrs. Godwin boarded the *RCCL Brilliance of the Seas* for a cruise from Tampa, Florida, to Grand Cayman, to Cozumel, Mexico, and back.  Mrs. Godwin was a paying passenger.

21.     On the first night of the cruise on December 15, 2018, at around 11:00 p.m. Mrs. Godwin began to suffer from slurred speech and right-sided weakness.  She could not walk

4

normally, and was very alarmed by her condition.  Her tongue was flopping out of her mouth from numbness.  She attempted to walk to the bathroom of her stateroom but was unable to do so. Her husband dialed the vessel's 911 and reported her dire condition to RCCL medical staff.

22.   Mrs. Godwin was taken to the *Brilliance of the Seas'* medical center to receive care and treatment from the ship's physician.  She was examined by Dr. Ervin Radetic, M.D.

23.   Dr. Radetic assessed Mrs. Godwin at around midnight on December 15, 2019, and diagnosed her with having suffered a "[c]erebral infarction, unspecified," i.e. a stroke.

24.   RCCL's physicians, including Dr. Radetic and the RCCL shoreside medical team are aware of the time-sensitive nature of stroke treatment.  It is known by RCCL that such a condition calls for urgent treatment at a capable facility.  A stroke patient cannot receive proper and necessary treatment, such as a mechanical thrombectomy or the administration of clot busting drugs while on an RCCL vessel.  Furthermore, time is of the essence in obtaining imaging and neurological consultations for stroke patients to achieve optimal outcomes.

25.   In light of the symptoms and manifestations exhibited by Mrs. Godwin, any reasonably prudent healthcare provider in Dr. Radetic's position would have known that a medical air-evacuation to a comprehensive stroke center was medically necessary.  Stroke is an emergent condition which requires the urgent initiation of proper treatments.

26.   An air-evacuation was both medically necessary and operationally feasible at the time Mrs. Godwin became ill.

27.   At all times material, Dr. Radetic was an employee or agent of RCCL, as its ship physician and was at all time material acting within the course and scope of his employment or agency with RCCL.

28.   Upon information and belief, at the time that Mrs. Godwin first presented to the vessel's medical center, the *Brilliance of the Seas* was within sight of Florida's southwest coast.

City lights from land were visible by the naked eye. The charted course for the underlying voyage took the Brilliance of the Seas close to Florida's southwest coast, the Florida Keys, Cancun, and Cuba. This geographic area is easily accessible by United States Coast Guard assets such as helicopters and cutters, and it is a routinely patrolled area by the United States Coast Guard. The vessel was in close helicopter range of several major cities with comprehensive stroke centers. There are also several major airports, naval air stations, and even cruise ports in the vicinity.

29. Despite Mrs. Godwin's dire condition which required urgent disembarkation to a higher level of care, and knowing that an air evacuation with a United States Coast Guard helicopter was operationally feasible in that geographic location, RCCL failed to contact the Coast Guard or inquire as to other possible disembarkation options to assist Mrs. Godwin. Instead, the decision was made to keep her on the vessel until it reached its first port call at Grand Cayman Island. Notwithstanding the close range of the *Brilliance of the Seas* to Florida soil, Mrs. Godwin was kept in the medical center of the Brilliance of the Seas for a staggering 30 hours after the initial onset of her symptoms. She was left without the proper care and treatment that she needed as a result.

30. RCCL personnel made the decision to continue to Grand Cayman without making any effort or arrangements to medically evacuate Mrs. Godwin to the United States or get her to a higher level of care capable of treating her for her condition prior to arrival at the pre-planned port of call. It appears that the Master and shore-side fleet operations never consulted the United States Coast Guard, or examined any possibilities for medical disembarkation or evacuation other than continuing on the pre-arranged voyage plan. Their aim was clear, to avoid operational disruption to the great detriment of their passenger.

31.     The RCCL *Brilliance of the Seas* arrived at port in Georgetown, Grand Cayman on December 17, 2018, at around 7:00 a.m., 30 hours after Mrs. Godwin's stroke symptoms began.  By that time Mrs. Godwin's condition had drastically declined.  She went paralyzed and lost the use of the right side of her body.  While at a Cayman Island medical center as a result of RCCL's delays, she suffered from an evolution of the stroke; it grew and enlarged, wreaking havoc on her brain and body.

32.     The failure to properly evaluate Mrs. Godwin and disembark her to a proper level of care prevented her from receiving imaging and diagnostic testing which would have enabled physicians and specialist to timely treat her condition and spare her form devastating injuries.

33.     The failure to properly evaluate Mrs. Godwin and disembark her to a proper level of care, and the corresponding delays in receiving necessary treatment for the stroke she was suffering prevented her from receiving proper thrombolytic medications, clot-busting drugs, to prevent the stroke symptoms from worsening into the catastrophic injuries she was eventually caused to suffer.

34.     The failure to properly evaluate Mrs. Godwin and disembark her to a proper level of care, and the corresponding delays in receiving necessary treatment for the stroke she was suffering prevented her from undergoing a mechanical thrombectomy, or other potential medical procedure to his benefit, to prevent the stroke symptoms from worsening into the catastrophic injuries he was eventually caused to suffer.

35.     The failure to properly evaluate Mrs. Godwin and disembark her to a proper level of care, and the corresponding delays caused by RCCL, prevented her from being emergently evacuated from the *Brilliance of the Seas* and evaluated by neurologists or neuro-interventional specialists who are trained to treat stroke patients.

36.     The delay in treating Mrs. Godwin caused by RCCL's negligence caused her to suffer devastating injuries.

37.     As a direct and proximate result of RCCL's negligence, Mrs. Godwin has been left with permanent devastating physical, cognitive and neurological deficits. She was rendered paralyzed on her right side.  She now requires help, care and treatment on a daily basis.  She suffered and continues to suffer from paralysis of her right arm and loss of mobility.  Her muscles have atrophied and wasted away due to her limitations.  She has lost basic mental abilities such as memory, concentration, perception and understanding.  Her life will never be the same.  She has sustained damages that include, but are not limited to, pain and suffering, physical injuries, disability, significant disfigurement, embarrassment, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care treatment expenses, and a shortened life span. Her recovery has been a grueling and tragic course.

38.     All conditions precedent to the commencement of this action have been performed, waived, or otherwise satisfied.

### COUNT I – NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 38 of this Complaint.

39.     In light of RCCL's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses  and emergencies experienced by past cruise passengers, it was reasonably foreseeable to RCCL that the *Brilliance of the Seas* would have passengers similar in age to Plaintiff, and passengers with common illnesses and emergencies such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

40.    RCCL owed Plaintiff the duty of exercising reasonable care under the circumstances.  In particular, as Plaintiff suffered a stroke onboard the *Brilliance of the Seas* and was taken to the ship's medical center, RCCL owed Plaintiff the duty of protecting her from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

41.    RCCL breached its duty of protecting Plaintiff from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. RCCL breached its duty in one or more of the following ways:

      a.    RCCL failed to properly treat Mrs. Godwin;

      b.    RCCL failed to perform or arrange for appropriate diagnostics testing given Mrs. Godwin's condition;

      c.    RCCL failed to obtain consultations with appropriate specialists;

      d.    RCCL failed to properly monitor Mrs. Godwin;

      e.    RCCL failed to air-evacuate Mrs. Godwin from the ship so that she could promptly receive treatment;

      f.    RCCL  failed to timely divert the ship so that Mrs. Godwin could promptly receive treatment;

      g.    RCCL failed to contact the United States Coast Guard regarding the need for an air evacuation;

      h.    RCCL failed to properly or timely consult qualified shore-based personnel regarding Mrs. Godwin 's condition;

      i.    RCCL failed to obtain a proper medical opinion regarding Mrs. Godwin 's condition;

      j.    RCCL failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. Godwin's condition;

k.    RCCL failed to develop and institute adequate procedures and policies to address Mrs. Godwin 's medical situation;

l.    RCCL failed to appreciate the severity of Mrs. Godwin's worsening condition;

m.    RCCL failed to perform any procedure to Mrs. Godwin 's medical benefit;

n.    RCCL failed to properly ascertain sufficient information to determine where Mrs. Godwin should be transferred;

o.    RCCL negligently elected to send Mrs. Godwin to a medical facility in Grand Cayman that was not properly equipped to treat her condition;

p.    RCCL failed to ascertain whether the medical facility in Grand Cayman was capable of treating its passenger prior to disembarking her to the facility;

q.    RCCL deviated from the standard of care for treating patients in Mrs. Godwin's condition.

42.    RCCL knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to RCCL. RCCL is aware that passengers may suffer from life threatening conditions such as stroke, and are aware of the urgent need to air evacuate such patients to competent medical centers capable of providing treatment.

43.    As a direct and proximate result of RCCL breaching its duty to Mrs. Godwin, she has been left with permanent devastating cognitive and neurological deficits. If Mrs. Godwin had received appropriate care and treatment onboard or been timely evacuated from the ship, he would not have suffered such devastating injuries to his brain and body.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against RCCL for compensatory damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

### COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 38 of this Complaint.

44.    In light of RCCL's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to RCCL that the *Brilliance of the Seas* would have passengers similar in age to Plaintiff, and passengers with common illnesses and emergencies such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper medical logistical support and medical evacuation.

45.    RCCL, through its non-medical personnel, including its officers, directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of RCCL, both on board the *Brilliance of the Seas* and located at RCCL's shore-side offices, owed Plaintiff the duty of exercising reasonable care under the circumstances. In particular, as Plaintiff suffered a stroke onboard the *Brilliance of the Seas* and was taken to the ship's medical center, RCCL owed Plaintiff the duty of protecting her from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

46.    RCCL, through the negligence of its non-medical personnel, breached its duty to Plaintiff to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. RCCL breached its duty in one or more of the following ways:

11

a.   RCCL failed to timely and properly communicate the condition of Mrs. Godwin to its shore side personnel;

b.   RCCL failed to follow proper policies and procedures to ascertain the operational feasibility of a medical evacuation for Mrs. Godwin;

c.   RCCL failed to air-evacuate Mrs. Godwin from the ship so that she could promptly receive treatment;

d.   RCCL failed to timely divert the ship so that Mrs. Godwin could promptly receive treatment;

e.   RCCL failed to evacuate Mrs. Godwin by speed boat, tender boat, or transfer;

f.   RCCL failed to contact the United States Coast Guard regarding the need for an air evacuation;

g.   RCCL failed to ascertain whether the medical facility in Grand Cayman was a proper choice for the disembarkation of its passenger;

h.   RCCL failed to choose a medical center capable of adequately treating its passenger prior to disembarkation;

i.   RCCL failed to arrange for any follow up transportation from Grand Cayman to the United States for its passenger.

47.   RCCL, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to RCCL.

48.   As a direct and proximate result of RCCL breaching its duty to Mrs. Godwin, she has been left with permanent devastating cognitive and neurological deficits.

If Mrs. Godwin had received appropriate care and treatment onboard or been timely evacuated from the ship, she would not have suffered such devastating injuries to his brain and body.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the RCCL for compensatory damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

## COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL
**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 38 of this Complaint.

49.     RCCL's medical personnel, including the doctors and nurses on board the *Brilliance of the Seas*, were the employees, agents, servants and/or persons otherwise authorized to act on behalf of RCCL. Thus, RCCL is vicariously liable for the acts and/or omissions of its medical personnel.

50.     RCCL acknowledged that its medical personnel, including the doctors and nurses onboard the *Brilliance of the Seas*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) RCCL directly paid the medical personnel for their work in the medical center onboard the *Brilliance of the Seas*; (2) the medical center on board the *Brilliance of the Seas* was created, owned and operated by RCCL; (3) the medical personnel on board the *Brilliance of the Seas* worked at what RCCL describes in its advertising as RCCL's medical center; and (4) RCCL knowingly provided, and the medical personnel on board the *Brilliance of the Seas* knowingly wore, uniforms bearing RCCL's name and logo; the ship physician on the *Brilliance of the Seas* is considered and titled an officer of RCCL's cruise line.

51.     RCCL's medical personnel, including the doctors and nurses on board the *Brilliance of the Seas*, were subject to the right of control by RCCL, and were acting within the

13

scope of their employment or agency. For example: (1) the medical personnel were employed by RCCL; (2) the medical personnel were hired to work in a medical center on board the *Brilliance of the Seas* that was created, owned and operated by RCCL; (3) the medical personnel were paid salaries and/or other employment related benefits directly by RCCL; (4) the medical personnel on board the *Brilliance of the Seas* were considered to be members of the ship's crew; (5) the medical personnel were required to wear uniforms or other insignia furnished by RCCL; (6) RCCL put the medical personnel on board the *Brilliance of the Seas* under the command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) RCCL had the right to fire its medical personnel; (8) RCCL directly billed the Plaintiff and other passengers onboard the *Brilliance of the Seas* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the *Brilliance of the Seas* were subject to the control of RCCL's shore-side medical department.

52.     RCCL, through its medical personnel, owed Mrs. Godwin the duty of exercising reasonable care under the circumstances. In particular, as Mrs. Godwin suffered a stroke on board the *Brilliance of the Seas* and was taken to the ship's medical center, RCCL owed Mrs. Godwin the duty of protecting her from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

53.     RCCL, through its medical personnel, breached its duty of protecting Mrs. Godwin from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. RCCL, through its medical personnel, breached its duty in one or more of the following ways:

a. RCCL failed to properly treat Mrs. Godwin;

b. RCCL failed to perform or arrange for appropriate diagnostics testing given Mrs. Godwin's condition;

c. RCCL failed to obtain consultations with appropriate specialists;

d. RCCL failed to properly monitor Mrs. Godwin;

e. RCCL failed to air-evacuate Mrs. Godwin from the ship so that she could promptly receive treatment;

f. RCCL  failed to timely divert the ship so that Mrs. Godwin could promptly receive treatment;

g. RCCL failed to contact the United States Coast Guard regarding the need for an air evacuation;

h. RCCL failed to properly or timely consult qualified shore-based personnel regarding Mrs. Godwin 's condition;

i. RCCL failed to obtain a proper medical opinion regarding Mrs. Godwin 's condition;

j. RCCL failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. Godwin's condition;

k. RCCL failed to develop and institute adequate procedures and policies to address Mrs. Godwin 's medical situation;

l. RCCL failed to appreciate the severity of Mrs. Godwin's worsening condition;

m. RCCL failed to perform any procedure to Mrs. Godwin 's medical benefit;

n. RCCL failed to properly ascertain sufficient information to determine where Mrs. Godwin  should be transferred;

o. RCCL negligently elected to send Mrs. Godwin to a medical facility in Grand Cayman that was unequipped and unable to treat her condition;

     p.     RCCL failed to ascertain whether the medical facility in Grand Cayman was capable of treating its passenger prior to disembarking her to the facility;

     q.     RCCL deviated from the standard of care for treating patients in Mrs. Godwin's condition.

54.     RCCL, through its medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to RCCL.

55.     As a direct and proximate result of RCCL breaching its duty to Mrs. Godwin, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Godwin had received appropriate care and treatment onboard or been timely evacuated from the ship, he would not have suffered such devastating injuries to his brain and body.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the RCCL  for compensatory damages, punitive damages, interest, court costs, and  all other relief recoverable under law or as this Court deems just and proper.

## COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL
### (**Vicarious Liability Based Upon Apparent Agency**)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 38 of this Complaint.

56.     RCCL's medical personnel, including the doctors and nurses on board the Brilliance of the Seas, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of RCCL. Thus, RCCL is vicariously liable for the acts and/or omissions of its medical personnel.

57.     RCCL made representations to the Plaintiff and other passengers onboard the *Brilliance of the Seas* that the ship's medical personnel were the employees, agents, servants

and/or persons otherwise authorized to act for RCCL's benefit. For example: (1) RCCL promoted the medical personnel on board the *Brilliance of the Seas* and represented them as being RCCL employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) RCCL promoted the medical center on board the *Brilliance of the Seas* and described it in proprietary language; (3) the medical personnel on board the *Brilliance of the Seas* worked in the medical center that RCCL promoted and described in proprietary language; (4) RCCL directly bills the Plaintiff and other passengers onboard the *Brilliance of the Seas* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the medical personnel on board the *Brilliance of the Seas* were required to wear uniforms or other insignia furnished by RCCL; (6) RCCL held out the medical personnel on board the *Brilliance of the Seas* as members of the ship's crew; and (7) the medical personnel on board the *Brilliance of the Seas* spoke and acted as though they were employed by RCCL s. RCCL  had knowledge of such representations but never took any action to indicate otherwise.

58.    RCCL's representations to the Plaintiff and other passengers onboard the *Brilliance of the Seas* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for RCCL's benefit. Indeed, RCCL actually intended that the Plaintiff and other passengers onboard the *Brilliance of the Seas* have such perception or belief because it is a marketing tool to induce passengers such as the Plaintiff to purchase cruises on RCCL s' ships in the first place, to feel secure while on board RCCL s' ships and/or to be a repeat customer.

59.    RCCL s' representations to the Plaintiff and other passengers onboard the *Brilliance of the Seas* induced their detrimental, justifiable reliance upon the appearance of

17

agency. For example, Mrs. Godwin justifiably relied upon RCCL s' representations in deciding to purchase a cruise on the *Brilliance of the Seas*.

60.     RCCL, through its medical personnel, owed Mrs. Godwin the duty of exercising reasonable care under the circumstances. In particular, as Mrs. Godwin suffered a stroke onboard the *Brilliance of the Seas* and was taken to the ship's medical center, RCCL owed Mrs. Godwin the duty of protecting her from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

61.     RCCL, through its medical personnel, breached its duty of protecting Plaintiff from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. RCCL, through its medical personnel, breached its duty in one or more of the following ways:

  a.     RCCL failed to properly treat Mrs. Godwin;

  b.     RCCL failed to perform or arrange for appropriate diagnostics testing given Mrs. Godwin's condition;

  c.     RCCL failed to obtain consultations with appropriate specialists;

  d.     RCCL failed to properly monitor Mrs. Godwin;

  e.     RCCL failed to air-evacuate Mrs. Godwin from the ship so that he could promptly receive treatment;

  f.     RCCL  failed to timely divert the ship so that Mrs. Godwin could promptly receive treatment;

  g.     RCCL failed to contact the United States Coast Guard regarding the need for an air evacuation;

  h.     RCCL failed to properly or timely consult qualified shore-based personnel regarding Mrs. Godwin 's condition;

18

i.      RCCL failed to obtain a proper medical opinion regarding Mrs. Godwin 's condition;

j.      RCCL failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. Godwin's condition;

k.     RCCL failed to develop and institute adequate procedures and policies to address Mrs. Godwin 's medical situation;

l.      RCCL failed to appreciate the severity of Mrs. Godwin's worsening condition;

m.    RCCL failed to perform any procedure to Mrs. Godwin 's medical benefit;

n.     RCCL failed to properly ascertain sufficient information to determine where Mrs. Godwin should be transferred;

o.     RCCL negligently elected to send Mrs. Godwin to a medical facility in Grand Cayman that was unequipped and unable to treat his condition;

p.     RCCL failed to ascertain whether the medical facility in Grand Cayman was capable of treating its passenger prior to disembarking her to the facility;

q.     RCCL deviated from the standard of care for treating patients in Mrs. Godwin's condition.

62.     RCCL, through its medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to RCCL.

63.     As a direct and proximate result of RCCL breaching its duty to Mrs. Godwin, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Godwin had received appropriate care and treatment onboard or been timely evacuated from the ship, he would not have suffered such devastating injuries to his brain and body.

*Godwin v. RCCL*
*Complaint and Demand for Jury Trial*

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against RCCL for compensatory damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims set forth herein.

Dated this 12th day of November, 2019.

Respectfully submitted,


By: */s/ Thomas Graham*
**Thomas Scolaro** (FBN 178276)
Email: scolaro@leesfield.com
**Thomas D. Graham** (FBN 89043)
Email: graham@leesfield.com
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Facsimile:  305-854-8266
*Attorneys for Plaintiff*

20