UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

MARY GODWIN,                      CASE NO:  1:19-cv-24672- GOODMAN

        Plaintiff,

v.

ROYAL CARIBBEAN CRUISE LTD.,
a Liberian Corporation,

        Defendant.

_____/

## DEFENDANT ROYAL CARIBBEAN CRUISES, LTD.'S MOTION IN LIMNINE TO EXCLUDE TESTIMONY OF DR. KENNETH TOTZ BASED ON DAUBERT AND RULE 702, WITH INCORPORATING MEMORANDUM OF LAW

Defendant, ROYAL CARIBBEAN CRUISE LTD., by and through undersigned counsel, hereby moves the Court, pursuant to Rules 104(a) and 702, Federal Rules of Evidence, for the entry of an order excluding the proposed expert witness testimony of Kenneth Totz, D.O. and in support thereof would state as follows:

### INTRODUCTION

1.      This is a maritime medical malpractice action arising from care and treatment rendered to Plaintiff Mary Godwin while a passenger aboard the *Brilliance of the Seas* on December 15, 2019.  [DE 1] Plaintiff alleges that she suffered a stroke aboard the vessel which was not treated appropriately by RCCL ship physicians, Dr. Johann Blignaut and Dr. Ervin Radetic.  In particular, Plaintiff contends that an emergency medical evacuation at sea (MEDEVAC) from the *Brilliance of the Seas* via a United States Coast Guard helicopter should have been coordinated by Drs. Blignaut and Radetic so that she could receive time sensitive treatment at a shoreside facility that purportedly could have prevented her from suffering

permanent neurologic deficits caused by her stroke. [Id. at ¶32-33] Defendant contends that the *Brilliance of the Seas* was located more than one hundred and fifty (150) nautical miles from the closest Coast Guard helicopter asset at the time Mrs. Godwin contacted the ship's medical team for assistance on the night in question. [See Captain Kenin Expert Disclosure attached as Composite Ex. A at pg. 3]

2.      Defendant has retained two Coast Guard experts (Captain Rick Kenin and Dr. Ken Harman) to explain why under United States Coast Guard (USCG) policies an emergency at sea helicopter evacuation was not warranted in this instance. Captain Rick Kenin served in the USCG for over thirty (30) years. [Id. at pg. 1] In addition to piloting over 5000 hours in rescue helicopters and fixed-wing aircraft, he commanded two Coast Guard air stations and ultimately served as Chief of Staff of the Seventh Coast Guard District in his final Coast Guard assignment. [Id.] Captain Kenin has opined that based upon the distance to shore and complexity/risks of the proposed mission, an emergency at sea helicopter evacuation of Mrs. Godwin would have taken in excess of six (6) hours to complete on the night in question. [Id. at pg. 3]

Dr. Ken Harman served as a U.S. Coast Guard Flight Surgeon from 2002 until 2014. [See Dr. Harman Expert Disclosure attached as Composite Ex. B] In 2008 he became the USCG Aviation Medicine Standardization Officer tasked with standardizing the policies and procedures for all USCG MEDEVAC operations. [Id. at pg. 1] Along with developing the Coast Guard's MEDEVAC policies, Dr. Harman also created a two-week course for flight surgeons new to the USCG that he continues to assist in training twice a year. [Id.] In 2018, he joined the USCG Auxiliary and has since worked as an active Flight Surgeon at several USCG Air Stations, given MEDEVAC training to senior aviation leadership at USCG Command Centers, and provided consultative services on a variety of issues to the USCG Medical Command. [Id.] Dr. Harman

contends that even if a request had been made by the ship's medical staff for an at sea emergency evacuation via a USCG helicopter on the night in question, the mission would not have been deemed medically warranted by the USCG because Captain Kenin's calculations indicate that Mrs. Godwin could not have been transferred to a shoreside facility within a three (3) hour window of opportunity to provide time sensitive stroke treatment. [Id. at pg. 4-5]

3.      Plaintiff has tasked Dr. Kenneth Totz as a "rebuttal" expert to present testimony concerning USCG policy and procedures in support of effectuating an emergency at sea helicopter evacuation on the night in question that challenges the foregoing opinions of Defendant's Coast Guard experts.  [See Expert Disclosure of Dr. Ken Totz attached as Composite Ex. C] However, Dr. Totz's opinions are so dangerously lacking in foundational basis that they are invalid.  In particular, not only does Dr. Totz lack any degree of experience in the field of maritime medicine, his limited experience as a flight surgeon was nearly twenty (20) years ago for the Navy, not the United States Coast Guard.   Thus, his opinions concerning "USCG MEDEVAC Policy and Procedure" do not come close to meeting the *Daubert* standard for reliability. Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993); Federal Rule of Evidence 702.

4.      Additionally Dr. Totz also expressed various neurology/causation opinions at his deposition that fail to pass *Daubert* scrutiny and/or are cumulative of other expert opinions in the case.  [See Dr. Totz Expert Disclosure attached as Composite Ex. C]

## MEMORANDUM OF LAW

### I.      DR. TOTZ'S USCG POLICY AND PROCEDURE OPINIONS ARE NOT ADMISSIBLE UNDER DAUBERT

The role of the trial court in the determination of the admissibility of expert testimony is to serve as the gatekeeper to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 579, 589 (1993).

This standard has since been expanded to expert testimony generally. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 146 (199) The Eleventh Circuit has adopted a conjunctive, three-part analysis for determining whether expert testimony is admissible under *Daubert* and Rule 702:

> To fulfill their obligation under *Daubert,* district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (internal citations omitted). The party offering the expert has the burden of satisfying each of these elements by a preponderance of the evidence. *Id.* at 1292. The Eleventh Circuit refers to these three considerations separately as "qualification, reliability, and helpfulness." <u>Hendrix v. Evenflo Co.</u>, 255 F.R.D. 568, 578 (N.D. Fla. 2009) *affd sub nom.* <u>Hendrix ex rel. G.P. v. Evenflo Co.</u>, 609 F.3d 1183 (11th Cir. 2010) (quoting <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir.2004)).

Dr. Totz's "USCG Policy and Procedure" opinion testimony falls short as to each of these three elements:

### A.   Dr. Totz  is Not Qualified to Offer "USCG" Opinions in This Case

Whether a witness is qualified is a threshold issue to be decided by the Court. Rule 104(a), Fed. R. Evid. The degree and manner of knowledge and experience is directly related to the complexity of the subject matter, and the corresponding likelihood of error by one who is insufficiently familiar. <u>U.S. v. Frazier</u>, 387 F. 3d 1244, 1260-61 (11th Cir. 2004) If experience is the basis of an expert opinion, it must  be  explained how experience leads to the conclusions

reached, why the experience is a sufficient basis, and how the experience is reliably applied to the facts. Id. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." Id.

Dr. Totz's proffered "USCG Policy and Procedure" opinions are not credible insofar as he proclaims that a United States Coast Guard MEDEVAC was a viable option that should have been coordinated on the night in question.[1] Quite amazingly, although Dr. Totz intends to comment that a helicopter evacuation from the *Brilliance of the Seas* via the USCG on the night in question was medically warranted, he has never served as a shipboard physician aboard a cruise ship. In fact, he has never been in a shipboard medical center or even stepped foot aboard a cruise ship in his entire life! Even more compelling, Dr. Totz has never actually served in the United States Coast Guard. [See Deposition of Dr. Totz_at pg. 72 ln. 4-11] Instead, after medical school he was on active duty in the United States Navy from 1999-2002, followed by three years of reserve time from 2002 to 2005. [Id. at pg. 37, ln. 22-25] Dr. Totz admits that during the three years he served in the Navy from 1999-2002 his primary duty was to provide primary care services to the active duty flight and support crew at a Naval Air Station. [Id. at pg. 41, ln. 12-18].

Nevertheless, Dr. Totz has no formal Coast Guard training. [Id. at pg. 45, ln. 19-22] He has never held any type of license, certificate, or ranking of any sort with the United States Coast Guard. [Id. at pg. 45, ln. 23- pg. 46, ln. 2] Instead, his experience was limited to "tagging along" with the Coast Guard on search and rescue missions "somewhere between" approximately "five and ten times" over a three year period from 1999-2002. [Id. at pg. 46, ln. 13-16; pg. 48, ln. 23- pg. 49 ln. 2] However, none of the purported "ride along" experiences involved a suspected stroke patient. [Id. at pg. 49, ln. 8-11] Moreover, none of the purported "ride along" experiences involved

---

[1] Dr. Totz agrees that any hypothetical helicopter evacuation of Mrs. Godwin from the *Brilliance of the Seas* on the night in question would have been responded to by the United States Coast Guard. [Id. at pg. 72, ln. 4-11]

hoist maneuvers at sea from a cruise ship. [Id. at pg. 51, ln. 17-23] Dr. Totz readily admits that he has absolutely no experience coordinating an evacuation of a patient from a cruise ship at sea to a shoreside facility in any capacity at all. [Id. at 59, ln. 6-9] In fact, Dr. Totz never coordinated a medevac operation *of any kind* during his time in the Navy. [Id. at pg. 41, ln. 9-pg. 42, ln. 12]

### B.     Dr. Totz's Opinions are not Reliable

Even if the Court were to consider Dr. Totz qualified, a qualified witness can still be challenged when the process used by the witness in forming the expert opinion is not sufficiently reliable under Daubert and its progeny. See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd., 326 F.3d 1333, 1342 (11th Cir.2003) (stating that "one may be considered an expert but still offer unreliable testimony"). Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." Id. (quoting Daubert, 509 U.S. at 590, 113 S. Ct. 2786).

The entirety of Dr. Totz's testimony on USCG MEDEVAC policies and procedures calls for the jury to basically "take his word for it" based upon his three years of experience serving in a separate military branch nearly twenty (20) years ago. However, his word is completely unreliable because he fails to accept that he is not fit for the testimony he attempts to offer in this case. Ultimately, Dr. Totz is being asked by the Plaintiff to opine on the policies and procedures of a separate military branch that he never served in and knows nothing about. For example, although he is being proffered to testify in this case as to "USCG MEDEVAC Policy and Procedure," Dr. Totz does not actually know what the policies and procedures were in place to effectuate an emergency medical evacuation at sea from a cruise ship on the night in question. [Id. at pg. 69, ln. 20- pg. 70 ln. 7] For example, when asked to comment about

either the Coast Guard or Royal Caribbean policies and procedures that would have applied for the hypothetical late night at sea helicopter evacuation he claims should have been performed for Mrs. Godwin, Dr. Totz admitted that he had not done any research to this effect and was therefore incapable of providing any substantive testimony as the following exchange revealed:

Q:   So let's say that Dr. Blignaut and Dr. Radetic determined that Mrs. Godwin should be medevac'd from the cruise ship on the night in question.  What do they do?

A:   Again, they have their policies and procedures that they—that they go through to reach out to—either calling their medical operations or—and/or if they can go directly to the Coast Guard themselves to arrange a medevac.

Q:   What are the policies and procedures?

A:   I don't have those.

Q:   You don't know them?

A:   I—I don't have or know them.

Q:   Do you know the policies and procedures for the Coast Guard?

A:   Which ones?

Q:   For medevacs.

A:   Oh, I don't and—nor can I enumerate the specific procedures—

[Id. at pg. 74, ln. 2-20]

Despite being utterly incapable of citing to any particular USCG policy or procedure addressing helicopter evacuations from a cruise ship at sea, Dr. Totz arrogantly concludes that Dr. Harman's opinion that the United States Coast Guard would not have approved a MEDEVAC request for Ms. Godwin if the mission could not be performed within three (3) hours of the onset of her stroke symptoms is "a most preposterous an (sic) illogical statement."

[See Ex. C at pg. 7] However, since Dr. Totz was completely unaware of what the specific Coast Guard policies and procedures were for at sea helicopter evacuations (let alone for those involving suspected stroke patients), he had no basis to refute Dr. Harman's contention, other than to cite to unidentified anecdotal evidence of one alleged instance when the three (3) hour policy was apparently not followed that he purportedly read about online. [See deposition of Dr. Totz at pg. 82 ln. 7- pg. 84 ln. 6]. However, Dr. Totz eventually conceded that he has no personal knowledge of any instances when a Coast Guard Flight Surgeon did not follow Dr. Harman's three (3) hour criteria for approving a requested medevac of a suspected stroke patient at sea. [Id. at 84 ln. 16-22]

The United States Coast Guard is not an Uber for cruise ship passengers who are unwell, and Dr. Totz's lack of relevant experience is nowhere more evident than in his willfully ignorant pronouncement that the Coast Guard, if called, would have simply assumed medical management of the patient and then retrieved her regardless of her medical condition or the logistical circumstances. Even when viewed in a light most favorable to the Plaintiff, Dr. Totz's proffered opinions on USCG policy and procedures as to the viability of a helicopter evacuation on the night in question would still be lacking in reliability to such an extent that they should be excluded given his eventual deference to Dr. Harman (the guy who wrote the USCG policies and currently trains USCG flight surgeons) as his deposition wore on:

Q:      You may differ on what the proper standard of care is for a stroke patient, but wouldn't you agree that as we sit here today, Dr. Harman is more qualified to explain what the Coast Guard policies and procedures are than you are?

MR. GRAHAM: Objection.

A:      I believe that Dr. Harman spent more time in the Coast Guard and—and likely has and does have a lot more familiarity with their processes.

[Id. at pg. 85, ln. 11-19]

### C.     Dr. Totz's  Opinions do not pass the Helpfulness Test

The final prong of the conjunctive, three-part test is helpfulness: will the testimony assist the jury, through the application of specialized expertise, understand the issue or determine a fact in evidence?     Rink v. Cheminova, Inc., 400 F. 3d 1286, 1291-92 (11th Cir. 2005).   It is evident that Dr. Totz's proffered testimony is nothing more than unfounded self-serving statements.  He served as a flight surgeon in the Navy for three (3) years nearly twenty (20) years ago.  He has no training as a Coast Guard flight surgeon, no role in the Coast Guard, and no familiarity with Coast Guard policies and procedures.   He has no experience participating in (let alone coordinating) MEDEVACS from a cruise ship.  He simply rode along on some Coast Guard missions out of interest, none of which he can describe with any specificity beyond admitting that they were in no way similar to Mrs. Godwin's proposed scenario.   Thus, it is clear that Dr. Totz cannot competently testify regarding either the Defendant's policies and procedures for at sea medical evacuations, or the Coast Guard's, and his attempt to provide "expert" analysis as to how USCG policies and procedures would have applied to Mrs. Godwin's hypothetical scenario on the night in question is not an "expert" opinion at all…it's just a paid opinion.

Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," courts "must take care to weigh the value of such evidence against its potential to mislead or confuse" United States v. Frazier, 387 F. 3d 1244, 1263 (11th Cir. 2004). The

potential to mislead – if not outright deceive – the jury in this case is clear because Dr. Totz lacks real world credentials and his opinions are merely generalizations.

While Defendant maintains that Dr. Totz's proffered testimony cannot withstand *Daubert* scrutiny, there is also the fact that Rule 403 considerations come to bear if any probative value of the evidence is outweighed by the danger of prejudice. U.S. v. Frazier, 387 F. 3d at 1263. Almost all the Rule 403 concerns apply here because Dr. Totz's testimony would confuse the issues, mislead the jury, waste time, and create unfair prejudice.

**III. DR. TOTZ'S NEUROLOGY/CAUSATION OPINIONS ARE SIMILARLY NOT ADMISSIBLE UNDER DAUBERT AND/OR CUMULATIVE OF OTHER EXPERT OPINIONS**

Although he admits that he is not a neurologist, Dr. Totz also contends that "this expert is of the opinion that Mrs. Godwin would have had an excellent opportunity for complete neurological recovery had she emergently been airlifted off the *Brilliance of the Seas* at the first indication she was having a medical emergency that exceeded the capabilities of the onboard medical crew and resources." [See Ex. C at pg. 9; *see also* Deposition of Dr. Totz at pg. 111 ln. 8-14] In support of his neurology/causation opinion, Dr. Totz contends that had Mrs. Godwin been delivered to a shoreside hospital, the treating neurologist could have administered a time sensitive clot busting medication called "tissue plasminogen activator" (t-PA) to prevent a permanent injury to her brain. [Id. at pg. 133, ln. 8-13] He opined that Mrs. Godwin did not have any contraindication to t-PA [Id. at pg. 122, ln. 6-9], and rather cavalierly suggests that the medication could even have been given to her beyond the time limits approved by the Food and Drug Administration (FDA) and outside of the guidelines established by the American Heart Association/American Stroke Association. [Id. at pg. 112, ln. 18-22; 115, ln. 19- pg.116 ln. 6] However, even he admits that he is unaware of any international body, peer

reviewed study, medical journal that supports his t-PA opinions. [Id. at pg. 116 ln. 7-13] Additionally, Dr. Totz further opines that Mrs. Godwin would have qualified for endovascular therapy treatment (wherein the subject clot in the brain responsible for causing the stroke could be extracted surgically via a mechanical thrombectomy procedure) despite acknowledging that he has no training in endovascular therapy and routinely refers to a specialist to make such treatment decisions. [Id. at pg. 111 ln. 15- pg. 112 ln. 2]

Notably, Plaintiff has also produced a neurologist named Dr. Ali Tehrani as expert witnesses in this case, who also expresses causation opinions that point blame at the Defendant for not securing the aforementioned time sensitive treatments at a shoreside facility for Mrs. Godwin on the night in question that he contends would have prevented her current neurologic deficits. [See Expert Disclosure of Dr. Tehrani attached as Composite Ex. D] Thus, assuming *arguendo* that the Court finds that Dr. Totz is qualified to offer neurology/causation opinions, his testimony must be excluded as needlessly cumulative of Dr. Tehrani. Expert testimony may be needlessly cumulative where there is substantial overlap between the areas on which two experts will testify. Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp., 2010 WL 4225947, *2 (S.D. Fla. 2010)(*quoting* Price v. Fox Entm't Grp., Inc., 499 F.Supp.2d 382, 390 (S.D.N.Y. 2007). Unnecessarily similar cumulative expert testimony may create the risk that a jury will resolve differences in expert opinion by "counting heads" instead of giving fair consideration to the quality and credibility of each expert's opinions." Id.

Dr. Totz's neurology/causation opinions are based on the same set of facts and reach the same conclusions as Dr. Tehrani. Therefore, the jury will receive absolutely no benefit by hearing Dr. Totz simply parrot Dr. Tehrani's opinions (or vice versa). Moreover, there is significant risk that the jury will resolve contrasting opinions of Plaintiff's and Defendant's

experts by merely "counting heads" and finding in Plaintiff's favor simply because Plaintiff had an additional expert to regurgitate the conclusions of her other experts. As a result, Dr. Totz's neurology/causation opinions are needlessly cumulative and must be excluded.

## CONCLUSION

For the foregoing reasons outlined above, Defendant respectfully requests that Kenneth Alan Totz, D.O., be precluded from offering opinions as to whether at sea emergency medical evacuation (MEDEVAC) via USCG helicopter was medically warranted via USCG policies and procedures and/or that the standard of care called for Royal Caribbean to request a MEDEVAC on the night in question. Defendant further requests entry of an Order precluding Dr. Totz from rendering neurology/causation opinions, or precluding Plaintiff from calling both Dr. Totz and Dr. Tehrani to render cumulative testimony.

## LOCAL RULE 7.1 COMPLIANCE

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff concerning the instant Motion, and was advised that Plaintiff objects to the relief sought in it.

Respectfully Submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: (561) 268-5727
Facsimile: (561) 268-5745

By: */s/ Michael J. Drahos*
    Michael J. Drahos
    Florida Bar No. 0617059
    *michael.drahos@gray-robinson.com*
    *lilia.parker@gray-robinson.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  November 22, 2021, the foregoing document was electronically filed with the Clerk of the /court using CM/ECF to the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/Michael J. Drahos
Michael J. Drahos

SERVICE LIST

1:19-cv-24672-COOKE/GOODMAN

Thomas Scolaro, Esquire
Thomas Graham, Esquire
Leesfield Scolaro, P.A.
2350 South Dixie Highway
Miami, FL 33133
(305) 373-2101
(305) 373-2103 FAX
scolaro@leesfield.com
graham@leesfield.com
leon@leesfield.com